**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **LUIS MANJARRES and GUILLERMINA MANJARRES** | |
| **Plaintiffs,** | **Case No. 1:24-CV-07714-AT** |
| **v.** | |
| **SOLAR MOSAIC, LLC, and MPOWER ENERGY, LLC d/b/a MPOWER SOLAR, LLC,** | |
| **Defendant,** | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SOLAR MOSAIC LLC'S MOTION TO COMPEL ARBITRATION**

By:  */s/ Kalama M. Lui-Kwan*
Kalama M. Lui-Kwan
*kalama.lui-kwan@troutman.com*
TROUTMAN PEPPER HAMILTON SANDERS LLP
Three Embarcadero Center, Suite 800
San Francisco, CA 94111
Telephone: (415) 477-5700

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ................................................................................................... 1

II.    STATEMENT OF FACTS ..................................................................................... 1

    A.     The March 22, 2023 Sales Pitch and Loan Agreement. ...................................... 1

    B.     Mr. Manjarres' Verification Phone Call With Solar Mosaic. ............................. 2

    C.     The Expanded Project Scope. ............................................................................. 3

    D.     The Arbitration Provision in the Loan Agreement. ............................................ 4

    E.     The Manjarreses' Claims in the Lawsuit. ......................................................... 6

III.    LEGAL STANDARD ........................................................................................... 7

IV.    ARGUMENT ......................................................................................................... 8

    A.     The Manjarres Agreed to Arbitrate the Dispute. ............................................... 8

        1.     Mr. Manjarres assented to the arbitration provision. ............................... 8

        2.     Ms. Manjarres is bound by the arbitration provision. ........................... 12

    B.     The FAA Governs and Requires the Manjarreses to Arbitrate Their Claims. ............................................................................................................ 13

    C.     The Manjarreses' Claims Fall Within the Scope of Arbitration Provision. ......... 15

    D.     The Manjarreses' Federal Statutory Claims are Arbitrable. ............................. 17

    E.     The Court Should Stay These Proceedings. ...................................................... 17

V.    CONCLUSION ................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995) ................................................................................................... 13

*Alvarez v. Experian Info. Sols., Inc.*,
    661 F. Supp. 3d 18 (E.D.N.Y. 2023), *aff'd*, No. 19-CV-3343 (JS)(JMW), 2024
    WL 3643269 (E.D.N.Y. Aug. 2, 2024) ..................................................................... 17

*Apuzzo v. Ulster Cnty.*,
    470 N.Y.S.2d 814 (1983), *aff'd*, 62 N.Y.2d 960 (1984) .......................................... 15

*AT&T Techs., Inc. v. Commc'ns Workers*,
    475 U.S. 643 (1986) ................................................................................................... 15

*In re Bear Stearns Companies, Inc. Sec., Derivative, & Erisa Litig.*,
    308 F.R.D. 113 (S.D.N.Y. 2015) ............................................................................. 12

*Bensadoun v. Jobe-Riat*,
    316 F.3d 171 (2d Cir. 2003) ....................................................................................... 7

*Boone v. Toyota Motor Credit Corp.*,
    No. 01 CIV. 737 (RCC), 2003 WL 1740452 (S.D.N.Y. Apr. 2, 2003) ................... 13

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006) ................................................................................................... 16

*Cho v. JS Autoworld 1 Ltd.*,
    97 F. Supp. 3d 351 (E.D.N.Y. 2015) ....................................................................... 17

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2003) ..................................................................................................... 14

*Clerk v. First Bank of Del.*,
    735 F. Supp. 2d 170 (E.D. Pa. 2010) ....................................................................... 14

*Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*,
    58 F.3d 16 (2d Cir. 1995) ......................................................................................... 15

*Crewe v. Rich Dad Educ., LLC*,
    884 F. Supp. 2d 60 (S.D.N.Y. 2012) .......................................................................... 9

*In re Currency Conversion Fee Antitrust Litig.*,
    265 F. Supp. 2d 385 (S.D.N.Y.2003) ....................................................................... 17

*Generale Bank, New York Branch v. Wassel*,
    No. 91 CIV. 1768 (LAP), 1995 WL 312466 (S.D.N.Y. May 19, 1995) ..................................9

*Gold v. Deutsche Aktiengesellschaft*,
    365 F.3d 144 (2d Cir. 2004)...................................................................................................9

*Grayson-Robinson Stores, Inc. v. Iris Const. Corp.*,
    8 N.Y.2d 133 (1960) ...........................................................................................................15

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79 (2000)................................................................................................................8

*Guyden v. Aetna, Inc.*,
    544 F.3d 376 (2d Cir. 2008)..................................................................................................7

*Harrington v. Atl. Sounding Co., Inc.*,
    602 F.3d 113 (2d Cir. 2010)..................................................................................................8

*Hines v. Overstock.com, Inc.*,
    380 F. App'x 22 (2d Cir. 2010) ............................................................................................8

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002)..............................................................................................................16

*Hsi v. Chen*,
    No. 117CV05436AMDLB, 2018 WL 6437063 (E.D.N.Y. Dec. 7, 2018) ............................12

*Kai Peng v. Uber Tech., Inc.*,
    237 F. Supp. 3d 36 (E.D.N.Y. 2017) .....................................................................................8

*Lakah v. UBS AG*,
    No. 07-CV-2799 (LAP), 2017 WL 7245365 (S.D.N.Y. Feb. 14, 2017) ...............................12

*Lojewski v. Group Solar USA, LLC*,
    No. 22 Civ. 10816 (PAE), 2023 WL 5301423 (S.D.N.Y. Aug. 17, 2023)............10, 11, 13, 18

*Lory Fabrics, Inc. v. Dress Rehearsal, Inc.*,
    434 N.Y.S.2d 359 (1980).....................................................................................................15

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
    252 F.3d 218 (2d Cir. 2001).................................................................................................15

*Mancilla v. ABM Indus., Inc.*,
    No. 20 CIV. 1330 (KPF), 2020 WL 4432122 (S.D.N.Y. July 29, 2020) ...............................9

*Marciano v. DCH Auto Grp.*,
    14 F. Supp. 3d 322 (S.D.N.Y. 2014).................................................................................9, 11

*Metzger v. Aetna Ins. Co.*,
  227 N.Y. 411 (1920) .............................................................................................9

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017)...............................................................................9, 10

*Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) .............................................................................................7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) .................................................................................................7

*Mu Qing Hsi v. Wen Qing Chen*,
  No. 17 CV 5436 (AMD)(LB), 2018 WL 6438349 (E.D.N.Y. Nov. 16, 2018),
  report adopted sub nom...........................................................................................12

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016)...................................................................................8

*O'Callaghan v. Uber Corp. of Cal.*,
  No. 17 CIV. 2094 (ER), 2018 WL 3302179 (S.D.N.Y. July 5, 2018)......................8

*Peterson v. Regina*,
  935 F. Supp. 2d 628 (S.D.N.Y. 2013).....................................................................8

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
  388 U.S. 395 (1967) ...........................................................................................14

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir. 2004)...................................................................................8

*Rent-A-Center West v. Jackson*,
  561 U.S. 63 (2010)..............................................................................................16

*Republic Nat. Bank v. Hales*,
  75 F. Supp. 2d 300 (S.D.N.Y. 1999), *aff'd sub nom. HSBC Bank USA v.
  Hales*, 4 F. App'x 15 (2d Cir. 2001) .......................................................................9

*Scherk v. Alberto-Culver Co.*,
  417 U.S. 506 (1974) .............................................................................................7

*Smith v. Spizzirri*,
  601 U.S. 472 (2024)............................................................................................17

*Southland Corp. v. Keating*,
  465 U.S. 1 (1984)...............................................................................................14

*Staples v. The Money Tree, Inc.*,
    936 F. Supp. 856 (M.D. Ala. 1996) ........................................................................14

*Teta v. Go N.Y. Tours, Inc.*,
    No. 24 CIV. 01614 (ER), 2024 WL 3252907 (S.D.N.Y. July 1, 2024)...................................11

*Thomson-CSF, S.A. v. Am. Arb. Ass'n*,
    64 F.3d 773 (2d Cir. 1995).....................................................................................12

**Statutes**

9 U.S.C. § 2 ................................................................................................................7

9 U.S.C. § 3 ...............................................................................................................17

**Other Authorities**

16 C.F.R. § 433.1 ........................................................................................................14

N.Y. C.P.L.R. 7501 .....................................................................................................14

## I.    INTRODUCTION

Following an in-person sales meeting with MPower Energy LLC's ("MPower Energy") door-to-door salesman Klevis Vulaj, Plaintiff Luis Manjarres agreed to have MPower Energy install a solar panel system on his and Plaintiff Guillermina Manjarres' property. Additionally, Mr. Manjarres agreed to finance the purchase and installation costs through a loan facilitated by Solar Mosaic LLC ("Solar Mosaic"). Mr. Manjarres digitally signed the loan contract that Solar Mosaic sent to his personal email address. He then had a phone call with a Solar Mosaic representative in which he confirmed he understood that he was taking out a loan to finance the project and what the loan terms included. The loan contract that Mr. Manjarres executed contains a binding arbitration provision requiring that he and Ms. Manjarres arbitrate all claims against Solar Mosaic related to the loan and solar panel sale.

Yet, after MPower Energy installed the solar panel system for the Manjarreses' property, they now sue Solar Mosaic and MPower Energy for requiring that they pay for the solar panel system by repaying the loan. The Manjarreses assert claims against Solar Mosaic for allegedly impermissibly pulling Mr. Manjarres' credit report, not disclosing the full loan terms when he entered into the transaction, not providing information about the three-day right to cancel the loan, and not agreeing to cancel the loan. These claims fall squarely within the loan agreement's arbitration provision, and Solar Mosaic elects to arbitrate this dispute. Accordingly, Solar Mosaic respectfully requests the Court compel the Manjarreses' claims to arbitration with the American Arbitration Association and stay this action pending the arbitration's completion.

## II.    STATEMENT OF FACTS

### A.    The March 22, 2023 Sales Pitch and Loan Agreement.

MPower Energy employee, Klevis Vulaj, visited the Manjarreses' property on March 22, 2023, to talk with Mr. Manjarres about a solar panel purchase that would help him and Ms.

Manjarres save on their electric bills. (Dkt. 1 at ¶ 25.) During the visit, Mr. Manjarres agreed to move forward with the solar panel system and to finance the purchase and installation costs. (**Ex. A – Treece Decl.** at ¶¶ 6-8 and Ex. 2; *see* Dkt. 1 at ¶¶ 27-29.) To start the process, Mr. Manjarres provided Mr. Vulaj with his social security number, date of birth, personal phone number, and personal email address. (Ex. A at ¶ 7 and Ex. 1; *see* Dkt. 1 at ¶ 26.) The information was used to submit Mr. Manjarres' loan application through Solar Mosaic's platform, and Solar Mosaic's lending partner, WebBank, approved Mr. Manjarres for the loan. (Ex. A at ¶¶ 7,8 and Ex. 1, 2.)

After approving the loan, WebBank generated a Home Improvement Loan Agreement And Promissory Note (the "Loan Agreement") for Mr. Manjarres. (*Id.* at ¶ 9 and Ex. 2.) Solar Mosaic then sent the Loan Agreement to Mr. Manjarres' personal email address to sign through a secure process. (*Id.* at ¶ 10 and Ex. 3.) Specifically, Mr. Manjarres could only sign the Loan Agreement by accessing his personal email account, opening the Solar Mosaic email with the link to DocuSign's website, clicking the link, and digitally signing the agreement on DocuSign's website. (*Id.* at ¶ 11 and Ex. 2, 3.) Mr. Manjarres followed the procedure and signed the Loan Agreement that same day through the secure DocuSign platform. (*Id.* at ¶ 12 and Ex. 2, 4.) In fact, DocuSign created a Certificate of Completion showing that Mr. Manjarres signed the Loan Agreement electronically. (*Id.* at ¶ 12 and Ex. 4.) Solar Mosaic then emailed the signed Loan Agreement to Mr. Manjarres. (*Id.* at ¶ 12 and Ex. 3.)

### B. Mr. Manjarres' Verification Phone Call With Solar Mosaic.

Before he could complete the financing process, Mr. Manjarres called Solar Mosaic to discuss the Loan Agreement. (Ex. A at ¶ 13 and Ex. 5.)[1] During the telephone conversation, Mr. Manjarres confirmed his name, address, phone number, and date of birth, as well as the last four

---

[1] The .mp3 recording is contemporaneously being submitted to chambers via mail.

digits of his social security number and his personal email address. (*Id.*) Mr. Manjarres then confirmed that he agreed to the loan contract. (*Id.*) He also verbally acknowledged that he understood the Loan Agreement's financing terms, such as the interest deferral period, annual percentage rate after the deferral period, and 25-year maturity date. (*Id.*) Mr. Manjarres did not ask questions during the call or tell the Solar Mosaic representative he did not understand any aspect of the Loan Agreement. (*Id.*)

> ### C.    The Expanded Project Scope.

MPower Energy later determined it needed to perform more work than initially quoted to install the solar panel system on the Manjarreses' property. (*Id.* at ¶ 14 and Ex. 7.) As a result, the solar panel project costs increased and MPower Energy created a proposal for the full, increased project scope. (*Id.* at ¶ 14 and Ex. 6, 7.)

Due to the increased costs, Mr. Manjarres required additional financing for the solar panel purchase and installation. (*Id.* at ¶ 14 and Ex. 6.) Accordingly, the Loan Agreement was revised on April 19, 2023, to accommodate the expanded scope. (*Id.*) However, only the price terms, start date, and end date changed in the Loan Agreement. (*Id.*)

Solar Mosaic sent the link to sign the revised Loan Agreement to Mr. Manjarres' personal email address. (*Id.* at ¶ 15 and Ex. 3.)  Mr. Manjarres followed the same signing process for the revised Loan Agreement by accessing his email account, opening the Solar Mosaic email with the link to DocuSign's website, and signing the Loan Agreement on the DocuSign platform. (*Id.* at ¶ 15 and Ex. 3, 6, 8.) DocuSign created a Certificate of Completion confirming that Mr. Manjarres signed the Loan Agreement electronically. (*Id.*) Solar Mosaic then emailed the signed April 19, 2023 Loan Agreement to Mr. Manjarres. (*Id.* at ¶ 15 and Ex. 3.)

Subsequently, WebBank assigned the Loan Agreement, both the original and the revised versions, to Solar Mosaic. (*Id.* at ¶ 16.) MPower also installed the solar panel system on the Manjarreses' property. (Dkt. 1 at ¶ 34.)

**D.    The Arbitration Provision in the Loan Agreement.**

Both versions of the Loan Agreement contain an arbitration provision. (Ex. A at Ex. 2 (16-18), 6 (16-18).) The provision is prominently displayed in capitalized, bolded lettering, and it includes notice of Mr. Manjarres' right to reject arbitration with no consequences to the remaining terms. It also contains the following language:

> ***ARBITRATION    PROVISION:    THIS    ARBITRATION PROVISION MAY HAVE A SUBSTANTIAL IMPACT ON THE WAY YOU OR WE WILL RESOLVE ANY CLAIM WHICH YOU OR WE MAY HAVE AGAINST EACH OTHER NOW OR IN THE FUTURE.***
>
> (a) *Effect of Arbitration Provision*. Unless prohibited by applicable law, and unless you reject this Arbitration Provision as described in section (m) below, you and we agree that either party may elect to require arbitration of any Claim under this Arbitration Provision.
>
> * * *
>
> (ii) "Claim" means any claim, dispute or controversy between you and us (or any Related Party), that arises from or relates in any way to this Note (including any amendment, modification or extension of this Note), the Merchant Agreement, the work performed by the Merchant or a subcontractor; the Products, including maintenance and servicing of the Products; the arrangements between us and the Merchant; any of our marketing, advertising, solicitations and conduct relating to your request for credit or the Products; our collection of any amounts you owe; or our disclosure of or failure to protect any information about you. "Claim" is to be given the broadest reasonable meaning and includes claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims and third-party claims, and claims based on constitution, statute, regulation, ordinance, common law rule (including rules relating to contracts, torts, negligence, fraud, or other intentional wrongs) and equity. It includes disputes that seek relief of any type, including damages and/or injunctive, declaratory or other equitable relief. . . . [A]ny dispute or argument that concerns

4

the validity or enforceability of this Note as a whole is for the arbitrator, not a court, to decide.

* * *

(i) *Governing Law.* Your credit purchase of the Products involves interstate commerce and this Arbitration Provision shall be governed by the FAA, and not Federal or state rules of civil procedure or evidence or any state laws that pertain specifically to arbitration. The arbitrator is bound by the terms of this Arbitration Provision. The arbitrator shall follow applicable substantive law to the extent consistent with the FAA, applicable statutes of limitation and applicable privilege rules, and shall be authorized to award all remedies available in an individual lawsuit under applicable substantive law, including, without limitation, compensatory, statutory and punitive damages (which shall be governed by the constitutional standards applicable in judicial proceedings), declaratory, injunctive and other equitable relief, and attorneys' fees and costs. The arbitrator shall issue a reasoned written decision sufficient to explain the essential findings and conclusions on which the award is based.

Mr. Manjarres' signature, indicating he received and agreed to the arbitration provision, appears at the end of the Loan Agreement after the following bolded, capitalized statement:

> **THE HOME IMPROVEMENT LOAN AGREEMENT INCLUDES AN ARBITRATION AGREEMENT, WHICH UNLESS YOU ARE A MILITARY LENDING ACT COVERED BORROWER, WILL HAVE A SUBSTANTIAL IMPACT ON YOUR RIGHTS IN THE EVENT OF A DISPUTE BETWEEN YOU AND US OR BETWEEN YOU AND MERCHANT. FOR EXAMPLE, WE (OR THE MERCHANT) MAY**
>
> **REQUIRE YOU TO ARBITRATE ANY CLAIM YOU INITIATE. IF SO, YOU WILL NOT HAVE THE RIGHT TO A JURY TRIAL OR THE RIGHT TO PARTICIPATE IN A CLASS ACTION IN COURT OR IN ARBITRATION. YOU HAVE A RIGHT TO REJECT THE ARBITRATION AGREEMENT AS SET FORTH IN THE HOME IMPROVEMENT LOAN AGREEMENT.**
>
> **YOU AND WE AGREE TO THE TERMS OF THIS HOME IMPROVEMENT LOAN PACKAGE, INCLUDING THE ARBITRATION PROVISION. YOU ACKNOWLEDGE THAT, BEFORE SIGNING THIS HOME IMPROVEMENT LOAN PACKAGE, YOU RECEIVED AND READ IT.**
>
> **YOU FURTHER ACKNOWLEDGE THAT NO PERSON HAS PERFORMED ANY ACT AS BROKER IN CONNECTION WITH THE MAKING OF THIS HOME IMPROVEMENT LOAN.**
>
> **YOU UNDERSTAND THAT THIS IS A DEFERRED INTEREST LOAN. YOU MUST PAY YOUR LOAN IN FULL BY 05/06/2024 TO AVOID PAYING ACCRUED INTEREST CHARGES.**

Borrower Signature: _____

Borrower Name Print: Luis Manjarres _____

Date: 03/23/2023 _____

(*Id.* at Ex. 2 (30).)

> THE HOME IMPROVEMENT LOAN AGREEMENT INCLUDES AN
> ARBITRATION AGREEMENT, WHICH UNLESS YOU ARE A
> MILITARY LENDING ACT COVERED BORROWER, WILL HAVE A
> SUBSTANTIAL IMPACT ON YOUR RIGHTS IN THE EVENT OF A
> DISPUTE BETWEEN YOU AND US OR BETWEEN YOU AND
> MERCHANT. FOR EXAMPLE, WE (OR THE MERCHANT) MAY
>
> REQUIRE YOU TO ARBITRATE ANY CLAIM YOU INITIATE. IF SO,
> YOU WILL NOT HAVE THE RIGHT TO A JURY TRIAL OR THE RIGHT
> TO PARTICIPATE IN A CLASS ACTION IN COURT OR IN
> ARBITRATION. YOU HAVE A RIGHT TO REJECT THE ARBITRATION
> AGREEMENT AS SET FORTH IN THE HOME IMPROVEMENT LOAN
> AGREEMENT.
>
> YOU AND WE AGREE TO THE TERMS OF THIS HOME
> IMPROVEMENT LOAN PACKAGE, INCLUDING THE ARBITRATION
> PROVISION. YOU ACKNOWLEDGE THAT, BEFORE SIGNING THIS
> HOME IMPROVEMENT LOAN PACKAGE, YOU RECEIVED AND READ
> IT.
>
> YOU FURTHER ACKNOWLEDGE THAT NO PERSON HAS
> PERFORMED ANY ACT AS BROKER IN CONNECTION WITH THE
> MAKING OF THIS HOME IMPROVEMENT LOAN.
>
> **YOU UNDERSTAND THAT THIS IS A DEFERRED INTEREST LOAN.
> YOU MUST PAY YOUR LOAN IN FULL BY 06/03/2024 TO AVOID
> PAYING ACCRUED INTEREST CHARGES.**
>
> Borrower Signature: _____
>
> Borrower Name Print: Luis Manjarres _____
>
> Date: 04/19/2023 _____

(*Id.* at Ex. 6 (30).)

### E.   The Manjarreses' Claims in the Lawsuit.

The Manjarreses now allege that Mr. Vulaj never told Mr. Manjarres the solar panels cost money and Mr. Manjarres does not recall taking out a loan to purchase the solar panels. (Dkt. 1 at ¶¶ 25-29.) Although the Manjarreses admit that Mr. Manjarres signed on Mr. Vulaj's iPad, they now claim that Mr. Manjarres only saw a blank space for his signature and they are attempting to couch Mr. Manjarres' assent as simply providing permission for MPower Energy to go on their roof. (*Id.* at ¶ 29.) This is belied by the fact that the Loan Agreement could only be signed by accessing it through Mr. Manjarres' personal email account and Mr. Manjarres' agreement to the loan terms during his conversation with Solar Mosaic. (Ex. A at ¶¶ 10-11, 15 and Ex. 2, 4, 5, 8.)

6

The Manjarreses filed their complaint against Solar Mosaic and MPower Energy on October 10, 2024. (Dkt. 1.) They assert claims for (1) violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681b ("FCRA"); (2) violation of the Truth in Lending Act, 15 U.S.C. § 1632(a) and 1683(a) ("TILA"); (3) violations of the New York General Business Law §§ 349 and 770; and (4) fraudulent concealment/nondisclosure. (*Id.*) They base each claim on MPower Energy and Solar Mosaic allegedly entering Mr. Manjarres into a fraudulent loan, accessing his credit report, failing to provide the loan disclosures and notice of right to cancel, and not cancelling the contracts. (*Id.*)

## III.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate disputes." *Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)). The FAA reverses "centuries of judicial hostility to arbitration agreements" and places them "upon the same footing as other contracts." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974) (internal marks and citation omitted).

In resolving a motion to compel arbitration, this Court must determine the following: (1) whether the parties entered into an agreement to arbitrate; (2) if so, the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) where some, but not all, claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration. *See Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008). "[T]he court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).

The party moving to compel arbitration "must make a *prima facie* initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'" *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (summary order). The moving party need not "show initially that the agreement would be enforceable, *merely that one existed*." *Id.* (emphasis added). Thereafter, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000)).

## IV.    ARGUMENT

### A.    The Manjarres Agreed to Arbitrate the Dispute.

Mr. Manjarres assented to the Loan Agreement, which included a binding arbitration provision. Mr. Manjarres and Ms. Manjarres then benefitted from the solar panel purchase and installation on their property. The Manjarreses cannot avoid arbitrating this dispute.

#### 1.    Mr. Manjarres assented to the arbitration provision.

New York state contract law principles govern whether an arbitration agreement exists. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). "To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound." *Peterson v. Regina*, 935 F. Supp. 2d 628, 635 (S.D.N.Y. 2013) (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004)).[2]

---

[2] Issues of contract formation . . . are governed by the choice-of-law doctrine of the forum state, here, New York." *Kai Peng v. Uber Tech., Inc.*, 237 F. Supp. 3d 36, 46 (E.D.N.Y. 2017). In New York, the court "applies the law of the place that 'has the most significant contacts with the matter in dispute.'" *Id.* There should be no dispute that New York has the most significant contacts here. *See O'Callaghan v. Uber Corp. of Cal.*, No. 17 CIV. 2094 (ER), 2018 WL 3302179, at *6 (S.D.N.Y. July 5, 2018).

Under New York law, a person "who signs or accepts a written contract is conclusively presumed to know its contents and to assent to them." *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (citing *Metzger v. Aetna Ins. Co.*, 227 N.Y. 411, 416 (1920)). "[A] party is under an obligation to read a document before he or she signs it, and a party cannot generally avoid the effect of a [document] on the ground that he or she did not read it or know its contents." *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 330 (S.D.N.Y. 2014); *see also Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 74 (S.D.N.Y. 2012); *Mancilla v. ABM Indus., Inc.*, No. 20 CIV. 1330 (KPF), 2020 WL 4432122, at *7 (S.D.N.Y. July 29, 2020) (Plaintiff's contention "that she does not recall seeing the Mutual Arbitration Agreement . . . is insufficient to create a genuine issue of material fact as to whether the parties entered into an arbitration agreement."). Additionally, "[c]ourts around the country have recognized that an electronic click can suffice to signify the acceptance of a contract, and that there is nothing automatically offensive about such agreements, as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (alterations and citation omitted).

Moreover, "a signer's duty to read and understand that which it signed is not diminished merely because the signer was provided with only a signature page." *Marciano*, 14 F. Supp. 3d at 330 (citations omitted). Where a borrower was "unable to review carefully the terms of the documents he signed, then it was incumbent upon him to either secure additional time in which to review those documents, or to refuse to sign." *Republic Nat. Bank v. Hales*, 75 F. Supp. 2d 300, 314 (S.D.N.Y. 1999), *aff'd sub nom. HSBC Bank USA v. Hales*, 4 F. App'x 15 (2d Cir. 2001). "Were it otherwise so, then any party to a contract could easily avoid his or her solemn obligations." *Id.*; *see also Generale Bank, New York Branch v. Wassel*, No. 91 CIV. 1768 (LAP),

1995 WL 312466, at *4 (S.D.N.Y. May 19, 1995) ("[I]t is no excuse that Wassel did not read the documents before signing them. New York law has long been clear that a party who fails to read a document before executing it cannot later complain about a misunderstanding of the contents.").

Judge Engelmayer of this Court recently compelled two plaintiffs' claims against Solar Mosaic to arbitration in a similar case. *Lojewski v. Group Solar USA, LLC*, No. 22 Civ. 10816 (PAE), 2023 WL 5301423 (S.D.N.Y. Aug. 17, 2023). In *Lojewski*, the plaintiffs agreed to purchase solar panels from Group Solar USA, LLC. They also executed a loan agreement facilitated by Solar Mosaic by signing on the sales agent's iPad. *Id.* at *3, 8. Plaintiffs alleged that the iPad only displayed the signature line on the DocuSign website and argued they were not bound by the loan agreement, including its arbitration provision, because the sales agent never showed or told them about the agreement's terms. *Id.* at *3.

Nevertheless, Judge Engelmayer agreed with Solar Mosaic that the plaintiffs assented to the contract terms, including the arbitration provision. *Id.* at *8-11. Judge Engelmayer reached this conclusion because the plaintiffs heard the sales agent's sales pitch, decided to move forward with the purchase and installation, and the wife digitally signed on the blank space when the sales agent handed her the iPad. *Id.* at *9. He reasoned that "any reasonable person in [the plaintiffs'] situation would presume that this third step of the process 'clearly contemplated some sort of continuing relationship between the putative user and [Solar Mosaic], one that would require some terms and conditions.'" *Id.* (quoting *Meyer*, 868 F.3d at 80). Judge Engelmayer also explained that the wife's subsequent direct interaction with a Solar Mosaic representative reinforced his decision. *Id.* Thus, Judge Engelmayer confirmed that the sales agent did not diminish the plaintiffs' duty to read and understand what the wife was signing by only presenting a signature page, and the plaintiffs remained bound by the arbitration provision. *Id.*

10

Here, there can be no dispute that Mr. Manjarres electronically signed the Loan Agreement through DocuSign on March 22, 2023 and April 19, 2023. Each time, the Loan Agreement was sent to Mr. Manjarres personal email address—the email address he confirmed was his own during the telephone conversation with Solar Mosaic. (Ex. A at ¶¶ 10-15 and Ex. 2-6, 8.) The Loan Agreement could only be signed by accessing Mr. Manjarres' personal email account and clicking the link to proceed with the DocuSign process.  (*Id.* at ¶¶ 11, 15 and Ex. 4, 8.) Mr. Manjarres even admits in the complaint that he electronically signed on Mr. Vulaj's iPad on March 22, 2023, and the Loan Agreement was the only document signed that day. (Dkt. 1 at ¶ 29; Ex. A at Ex. 2.) Mr. Manjarres then separately confirmed his agreement to the financing terms and conditions during his telephone conversation with Solar Mosaic. (Ex. A at ¶ 13 and Ex. 5.) Any reasonable person in Mr. Manjarres' situation would presume that these steps clearly contemplated some sort of continuing relationship between Mr. Manjarres and Solar Mosaic, one that would require some terms and conditions. *See Lojewski*, 2023 WL 5301423, at *8-11.

It is irrelevant that Mr. Manjarres chose not to scroll through the documents he signed. Had he so much as reviewed the Loan Agreement before singing either version, he would have discovered the arbitration provision contained in the section prominently titled "Arbitration Provision." (Ex. A at Ex. 2 (16-18), 6 (16-18).) He also would have seen, in bolded and capitalized font, a separate notice above his signature stating the Loan Agreement contained an arbitration provision. (*Id.* at 30.) Mr. Manjarres cannot evade the provision by claiming he did not read the Loan Agreement or was only presented with a signature page. *See, e.g., Marciano*, 14 F. Supp. 3d at 330; *Teta v. Go N.Y. Tours, Inc.*, No. 24 CIV. 01614 (ER), 2024 WL 3252907, at *4 (S.D.N.Y. July 1, 2024) ("[B]ecause Plaintiffs had a sufficient opportunity to read the agreement and assented to the agreement by affirmatively clicking on the box, the parties are bound by the agreement.").

### 2.    Ms. Manjarres is bound by the arbitration provision.

To the extent Ms. Manjarres could be considered a "non-signatory" to the Loan Agreement, she is nevertheless bound by its terms, including the arbitration provision. The Second Circuit has "recognized five theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995). Ms. Manjarres is bound to the Loan Agreement's arbitration provision under the "agency" and "estoppel" theories. *See id.*

More precisely, under New York law, "a spouse's actions may bind the other spouse under an implied agency theory when the circumstances suggest that one either has the authority to bind the other or where one acquiesces to the other's actions." *In re Bear Stearns Companies, Inc. Sec., Derivative, & Erisa Litig.*, 308 F.R.D. 113, 121 (S.D.N.Y. 2015). Here, the Manjarreses allege that Mr. Manjarres signed to give MPower Energy permission to move forward with the solar panel project for his and Ms. Manjarres' property. (Dkt. 1 at ¶ 33.) Ms. Manjarres does not claim that Mr. Manjarres lacked the authority to agree to the solar panel purchase and installation. The Manjarreses further allege that MPower Energy subsequently installed the solar panels on the property, which Ms. Manjarres did not object to. (*Id.* at ¶ 34.) Mr. Manjarres therefore demonstrated his apparent authority to bind Ms. Manjarres to the contractual relationship requiring arbitration of the dispute. *See Mu Qing Hsi v. Wen Qing Chen*, No. 17 CV 5436 (AMD)(LB), 2018 WL 6438349, at *4 (E.D.N.Y. Nov. 16, 2018), report adopted sub nom.; *Hsi v. Chen*, No. 117CV05436AMDLB, 2018 WL 6437063, at *1 (E.D.N.Y. Dec. 7, 2018) (spouse bound to arbitration provision where facts show spouse "intended to be bound by the loan agreements.").

Further, Ms. Manjarres is estopped from avoiding arbitration of her claims under the Loan Agreement because she benefitted from the Loan Agreement's terms. (*See* Dkt. 1 ¶ 34); *see also Lakah v. UBS AG,* No. 07-CV-2799 (LAP), 2017 WL 7245365, at *94 (S.D.N.Y. Feb. 14, 2017)

("A non-signatory who reaps a direct benefit made possible by the agreement will be estopped from avoiding an arbitration commenced by a signatory.").

*Lojewski* is again instructive. There, Judge Engelmayer determined the non-signing husband must arbitrate his dispute against Solar Mosaic because he received a benefit traced directly to the loan agreement—namely, "the installation of the solar panels at his residence and the loan enabling the purchase of those panels." *Lojewski*, 2023 WL 5301423, at *13. Like *Lojewski*, MPower Energy installed the solar panels for the Manjarreses' property. That only occurred because Mr. Manjarres financed the purchase and installation costs. Ms. Manjarres therefore benefitted from the Loan Agreement, which contains an arbitration provision. In short, all of the claims asserted by Mr. Manjarres and Ms. Manjarres against Solar Mosaic are subject to arbitration under the Loan Agreement.

**B.      The FAA Governs and Requires the Manjarreses to Arbitrate Their Claims.**

The FAA's liberal policy favoring arbitration governs the arbitration provisions enforcement. It applies because the Manjarreses agreed that the "purchase of the Products involves interstate commerce and this Arbitration Provision shall be governed by the FAA, and not Federal or state rules of civil procedure or evidence or any state laws that pertain specifically to arbitration." (Ex. A at Ex. 2 (17), 6 (17).) The parties' choice-of-law clause selecting the FAA is enforceable and provides an independent basis for the FAA's application. *See Boone v. Toyota Motor Credit Corp.*, No. 01 CIV. 737 (RCC), 2003 WL 1740452, at *3 (S.D.N.Y. Apr. 2, 2003) (federal law applies to arbitration provision where agreement stated that it "shall be governed by the Federal Arbitration Act").

Moreover, the FAA applies to all contracts "involving interstate commerce." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995). Courts interpret "involving interstate commerce" broadly because "the control over interstate commerce . . . reaches not only the actual

13

physical interstate shipment of goods but also contracts relating to interstate commerce." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 n.7 (1967). "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'  Only that general practice need bear on interstate commerce in a substantial way." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003).

The Loan Agreement involves interstate commerce because Congress regulates home solar panel financing transactions as illustrated by the Federal Trade Commission's "Holder Rule." *See* 16 C.F.R. § 433.1; *Alafabco, Inc.*, 539 U.S. at 56-57 (a transaction involves commerce when it represents activity "subject to federal control"). Additionally, the Manjarreses, New York residents, obtained a loan from WebBank, headquartered in Utah. (Dkt. 1 at ¶¶ 12, 13; Ex. A at Ex. 2, 6.) This also constitutes interstate commerce. *See Clerk v. First Bank of Del.*, 735 F. Supp. 2d 170, 173-174 (E.D. Pa. 2010) (holding loan agreement between borrower and out-of-state lender involves interstate commerce); *Staples v. The Money Tree, Inc.,* 936 F. Supp. 856, 859 (M.D. Ala. 1996) (agreeing loan transaction involving out-of-state lenders constituted a transaction involving commerce subject to the FAA). Therefore, Solar Mosaic requests that the Court compel this case to arbitration with the American Arbitration Association pursuant to the FAA and the parties' arbitration agreement.[3]

---

[3] Even if the FAA did not apply, and the Court instead applied New York law, the arbitration provision must still be enforced. More precisely, although the FAA preempts state law to the extent it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives" of the FAA (*Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984)), New York law shares the FAA's liberal policy favoring arbitration. *See* N.Y. C.P.L.R. 7501 ("A written agreement to submit any controversy thereafter arising or any existing controversy to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award."); *Lory Fabrics, Inc. v. Dress Rehearsal, Inc.,* 434 N.Y.S.2d 359, 363 (1980) ("New York law, too, favors arbitration."); *Grayson-Robinson*

### C.    The Manjarreses' Claims Fall Within the Scope of Arbitration Provision.

"[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986); *see also Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,* 252 F.3d 218, 225 (2d Cir. 2001) ("[V]ery expansive language will generally suggest a broad arbitration clause."); *Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (agreement "submitting to arbitration '[a]ny claim or controversy arising out of or relating to th[e] agreement' is the paradigm of a broad clause.").

The arbitration provision covers the Manjarreses' claims as it expressly applies to any claim, dispute, or controversy between the Manjarreses and Solar Mosaic "that arises from or relates in any way to [the Loan Agreement]"; any "marketing, advertising, solicitations and conduct relating to [Mr. Manjarres'] request for credit"; or Solar Mosaic's "collection of any amounts [Mr. Manjarres] owes." (Ex. A at Ex. 2 (16), 6 (16).) It also states that "claim" "is to be given its broadest reasonable meaning" and "any dispute or argument that concerns the validity or enforceability of this [loan agreement] as a whole is for the arbitrator, not a court, to decide." (*Id.*)

The Manjarreses' claims therefore fall squarely within scope of the arbitration agreement. They involve MPower Energy's advertisements and representations as to the solar panel system

---

*Stores, Inc. v. Iris Const. Corp.*, 8 N.Y.2d 133, 138 (1960) ("The courts should follow a 'liberal policy of promoting arbitration both to accord with the original intention of the parties and to ease the current congestion of court calendars'"); *Apuzzo v. Ulster Cnty.*, 470 N.Y.S.2d 814, 815 (1983), *aff'd*, 62 N.Y.2d 960 (1984) ("Because of the laudable purposes of arbitration, there is a clear judicial policy in favor of non-interference in this necessary and desirable alternative to litigation for dispute resolution.").

purchase price and Mr. Manjarres' payment obligations. (Dkt. 1 at ¶¶ 25-38, 50-92.) They also include the Manjarreses' disputes over how Mr. Manjarres received copies of the Loan Agreement and loan disclosures and their requests to cancel the loan. (*Id.*) The Manjarreses' claims also involve Solar Mosaic pulling Mr. Manjarres' credit report in connection with the transaction. (*Id.* at ¶¶ 50-53.) Because the Manjarreses' claims involve their dissatisfaction with the events leading up to the loan, their relationship with Solar Mosaic, and their request to invalidate the Loan Agreement, they must be arbitrated pursuant to the Loan Agreement's plain terms. (Dkt. 1 at ¶¶ 25-38, 50-92; Ex. A at Ex. 2 (16), 6 (16).)

Moreover, the Manjarreses delegated questions regarding the Loan Agreement's validity to the arbitrator. (Ex. A at Ex. 2 (16), 6 (16).) In other words, the Manjarreses could only establish the Loan Agreement is invalid *in arbitration*. Because "arbitration is a matter of contract," the "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center West v. Jackson*, 561 U.S. 63, 68-69 (2010); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). Indeed, "[a]n agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the federal court to enforce." *Rent-A-Center*, 561 U.S. at 70; *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-446 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of [a] contract's validity is considered by the arbitrator in the first instance.").

Here, the arbitration provision states a court must decide disputes regarding the arbitration provision's enforceability and scope, but the arbitrator must resolve any argument regarding the Loan Agreement's validity as a whole. (Ex. A at Ex. 2 (16), 6 (16).) ("[A]ny dispute or argument that concerns the validity or enforceability of this [loan agreement] as a whole is for the arbitrator,

not a court, to decide.") The Manjarreses do not dispute the arbitration provision's scope, only that they are bound by the Loan Agreement (including the arbitration provision) as a whole. That issue is for the arbitrator to decide.

### D.    The Manjarreses' Federal Statutory Claims are Arbitrable.

The Manjarreses assert two federal statutory claims against Solar Mosaic for alleged FCRA and TILA violations. Congress did not intend for those claims to be nonarbitrable. Clear precedent permits arbitration of claims under both statutes. *See Alvarez v. Experian Info. Sols., Inc.*, 661 F. Supp. 3d 18, 33 (E.D.N.Y. 2023), *aff'd*, No. 19-CV-3343 (JS)(JMW), 2024 WL 3643269 (E.D.N.Y. Aug. 2, 2024) (compelling FCRA claim to arbitration); *Cho v. JS Autoworld 1 Ltd.*, 97 F. Supp. 3d 351, 357–58 (E.D.N.Y. 2015) ("Numerous courts have found TILA claims to be arbitrable.") (quoting *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 408 (S.D.N.Y.2003)). Therefore, the Manjarreses' statutory claims do not bar arbitration.

### E.    The Court Should Stay These Proceedings.

The Supreme Court recently ruled that, when the moving party requests a stay, district courts must stay rather than dismiss cases compelled to arbitration while the arbitration is pending under the FAA. *Smith v. Spizzirri*, 601 U.S. 472, 475-477 (2024); *see also* 9 U.S.C. § 3. Because the Manjarreses' claims against Solar Mosaic are subject to binding arbitration, Solar Mosaic requests the Court stay the case pending the arbitration's completion.

The stay should extend to any claims brought against MPower Energy. Solar Mosaic anticipates that MPower Energy will bring its own motion to compel arbitration under its proposal contract with Mr. Manjarres. The arbitration will also involve determining whether Solar Mosaic could be derivatively liable for MPower Energy's alleged conduct. *See Lojewski*, 2023 WL 5301423, at *14. A stay of the entire proceeding is appropriate.

## V.    CONCLUSION

Mr. Manjarres assented to the Loan Agreement and both Mr. Manjarres and Ms. Manjarres are bound by the arbitration provision within the agreement. The Manjarreses now assert claims against Solar Mosaic and MPower Energy that fall within the scope of the arbitration provision. Accordingly, Solar Mosaic respectfully requests that the Court grant its motion, compel the Manjarreses to arbitrate their claims with the American Arbitration Association, stay this action while the arbitration is pending, and grant it such other and further relief as this Court deems appropriate and just.

Dated this 26th day of November 2024.

Respectfully Submitted,

_/s/ Kalama M. Lui-Kwan_
Kalama M. Lui-Kwan
TROUTMAN PEPPER
HAMILTON SANDERS LLP
Three Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone: (415) 477-5751
Email: kalama.lui-kwan@troutman.com
*Attorney for Defendant Solar Mosaic LLC*

## <u>INDEX OF EXHIBITS</u>

**EXHIBIT A:** Declaration of Devon Treece.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 26, 2024, I caused the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SOLAR MOSAIC LLC'S MOTION TO COMPEL ARBITRATION**, to be electronically filed on the date hereof with the Clerk of the Court for the United States District Court by using the Court's CM/ECF system and served through the Court's Notice of electronic filing system automatically generated to those parties registered on the Court's Master E-Service List.

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

By: */s/ Kalama M. Lui-Kwan*
Kalama M. Lui-Kwan